United States District Court
Southern District of Texas

**ENTERED**

March 16, 2021

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KATHY LYNN HILLERY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-19-3969 |
| | § | |
| ANDREW SAUL, COMMISSIONER | § | |
| OF THE SOCIAL SECURITY | § | |
| ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court[1] in this social security appeal is Defendant's Motion for Summary Judgment (Document No. 14) and Plaintiff's Cross Motion for Summary Judgment (Document No. 16) and Brief in Support (Document No. 17). Having considered the cross motions for summary judgment, each side's response to the other's motion (Document Nos. 19 & 23), the administrative record, the written decision of the Administrative Law Judge dated April 2, 2018, and the applicable law, the Court ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment is GRANTED, Defendant's Motion for Summary Judgment is DENIED, and this proceeding is REMANDED to the Commissioner for further proceedings.

---

[1] On January 7, 2021, pursuant to the parties' consent, this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 18.

## I.       Introduction

Plaintiff Kathy Lynn Hillery ("Hillery") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits.  Hillery primarily claims in this appeal that: (1) "The ALJ misstated and/or misapplied the legal standard for assessing "severity" at step two in violation of *Stone v. Heckler*;" and (2) "The ALJ failed to follow the "psychiatric review technique regulation;" properly evaluate and weigh the medical opinions of record."  She also claims that the ALJ used an incorrect durational requirement; the ALJ improperly penalized her for her failure to follow prescribed treatment; and the ALJ relied on her own lay opinion about Hillery's impairments. The Commissioner, in contrast, argues that there is substantial evidence in the record to support the ALJ's April 2, 2018, decision, that the decision comports with applicable law, and that the decision should be affirmed.

## II.      Procedural History

On October 7, 2015, Hillery filed an application for disability insurance benefits ("DIB"), claiming that she had been unable to work since December 18, 2014, as a result of diabetes, cholesterol, and chronic back and shoulder pain (Tr. 283-286; 311).   The Social Security Administration denied the application at the initial and reconsideration stages.  After that, Hillery requested a hearing before an ALJ.  The Social Security Administration granted her request and the ALJ, Jessica Hodgson, held a hearing on February 22, 2018, at which Hillery's claims were considered *de novo*  (Tr. 53-120).  Thereafter, on April 2, 2018, the ALJ issued her decision finding

Hillery not disabled (Tr. 37-48).

Hillery sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 416.1470. On April 17, 2019, the Appeals Council found no basis for review (Tr. 10-12), and the ALJ's decision thus became final.

Hillery filed a timely appeal of the ALJ's decision. 42 U.S.C. § 405(g). Both sides have filed a Motion for Summary Judgment, each of which has been fully briefed. The appeal is now ripe for ruling.

### III.     Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the

record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

## IV.    Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A).  The impairment must be proven through medically accepted clinical and

laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).  The impairment must be so severe as to

limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of whether such work exists in the
> immediate area in which he lives, or whether a specific job vacancy exists for him,
> or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A).  The mere presence of an impairment is not enough to establish that one

is suffering from a disability.  Rather, a claimant is disabled only if he is "incapable of engaging in

any substantial gainful activity."  *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting

*Milam v. Bowen,* 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe impairment" or combination of impairments, he will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, he will be found disabled.

*Anthony,* 954 F.2d at 293; *see also Leggett v. Chater,* 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren*

*v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991).  Under this framework, the claimant bears the burden

of proof on the first four steps of the analysis to establish that a disability exists.  If successful, the

5

burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel,* 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett,* 67 F.3d at 563.

Here, the ALJ found at step one that Hillery had not engaged in substantial gainful activity since December 18, 2014, her alleged onset date. At step two, the ALJ determined that Hillery's osteoarthritis, major depressive disorder, neurocognitive disorder, and diabetes were "medically determinable impairments," but none was severe. With all of Hillery's impairments being characterized by the ALJ as non-severe, the ALJ concluded at step two that Hillary was not disabled. Hillery complains about that step two determination, arguing that the ALJ used an incorrect severity standard, that the ALJ failed to assess the severity of Hillery's mental impairment by reference to the psychiatric review technique in 20 C.F.R. § 404.1520a, that the ALJ utilized an incorrect durational requirement in assessing Hillery's mental impairment, that the ALJ improperly relied upon Hillery's failure/refusal to take additional medication, and that the ALJ relied on her own lay opinion and improperly rejected the expert medical opinions in the record.

Because this case was decided at the administrative level at step two, the overarching issue in this appeal is whether that step two decision is supported by substantial evidence and whether the ALJ utilized the correct legal standards in arriving at that decision.

## V.      Discussion

Hillery's complaints in this proceeding about the ALJ's step two determination is based exclusively on the ALJ's determination that Hillery's mental impairments were not severe. No argument is advanced by Hillery in this proceeding that the ALJ erred at step two in finding her physical impairments to be non-severe. As such, it is only Hillery's mental impairments, and the ALJ's severity determination related thereto, that is at issue.

Initially, it must be noted that Hillery alleged in her DIB application that she was disabled as a result of diabetes, cholesterol and chronic back and shoulder pain. No *direct* mention was made in the application materials of any mental impairment. What was mentioned was forgetfulness, confusion, trouble concentrating, trouble sleeping, and trouble handling simple tasks (Tr. 325, 327, 332, 333, 336, 346). None of those complaints were characterized by Hillery as being related to depression or any other mental impairment. That is consistent with Hillery's reports to her primary care physician in 2014 and 2015 (Dr. Yezid F. Mora) and the absence of any mention during that time period of depression or any other mental impairment.

In late December 2015, Hillery was seen by Dr. Patricia Salvato primarily for her complaints of pain. As part of that initial assessment, however, Dr. Salvato made mention of Hillery's tension, mood changes, sleep disturbance, anxiety and depression (Tr. 519). Dr. Salvato referred Hillery for a cognitive assessment, which was conducted by Laurie Fairall on December 29, 2015. (548-561). That assessment revealed deficits in composite memory, verbal memory, psychomotor speed, cognitive flexibility, processing speed, and executive functioning (Tr. 548-561). Fairall noted that the cognitive deficits, as well as Hillery's anxiety and depression, could possibly be attributable to inadequate sleep (Tr. 549).

On March 11, 2016, Hillery was seen by Dr. Larry Pollack, a neuropsychologist, for a

7

comprehensive neuropsychological evaluation.  That evaluation was done at the behest of Hillery's attorney.  That results of that evaluation are contained in a 18 page report, in which Dr. Pollock noted that even though Hillery denied being depressed, she had many symptoms of depression, including lack of interest and enjoyment, feelings of uselessness, irritability, sleep problems, low energy, trouble concentrating, difficulty making decisions, nervousness, tension, restlessness and an inability to relax (Tr. 577).  He found, based on the testing and evaluation he conducted that Hillery had "significant neuropsychological impairments," which affected her ability to perform work related activities (Tr. 578-79).  In an associated "Medical Assessment of Ability to Do Work-Related Activities (Mental)," Dr. Pollock opined on April 28, 2016, that Hillery had a "fair" ability to follow work rules, relate to co-workers, deal with the public, interact with supervisors, and function independently, and a "poor" ability to use judgment, deal with work stress, and maintain attention and concentration.   In a follow-up assessment done on June 16, 2017, Dr. Pollock re-affirmed his prior diagnoses of major neurocognitive disorder and major depressive disorder (Tr. 595-602).  In the four broad areas of mental functioning contained in 20 C.F.R. 404.1520a, Dr. Pollock opined that Hillery had marked limitations in the area of understanding, remembering or applying information, marked limitations in the area of interacting with others, marked limitations in the area of concentrating, persisting or maintaining pace, and moderate limitations in the area of adapting and managing oneself (Tr. 596-602).  In a later Medical Source Statement, dated February 12, 2018, Dr. Pollock indicated that Hillery had serious limitations in many of the aspects of understanding, remembering and applying information, interacting with others, and concentrating, persisting or maintaining pace (Tr. 634-636).

Dr. Pollock testified at the administrative hearing in accord with his written evaluation.  He

also explained at the hearing that while Hillery had not reported having any depression or other psychological problems, he believed that that was attributable to Hillery's psychological denial, and her associated inability to see "reality realistically"  (Tr. 90).

At step two, the claimant bears the burden of showing that she has a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  The step two requirement that the claimant have a severe impairment is generally considered to be "a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987)).  "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v.* Heckler, 745 F.2d 340, 341 (5th Cir. 1984)).  Under the standard set forth in *Stone*, an impairment causing any interference with work ability, even minimal interference, is a severe impairment. *See Scroggins v. Astrue*, 598 F.Supp.2d 800, 805 (N.D.Tex. 2009) ("*Stone* provides no allowance for a minimal interference on a claimant's ability to work.").

The ALJ's step two determination in this case is faulty for the first two reasons posited by Hillery.  First, the ALJ used, in various parts of the decision, a severity standard that is much more stringent than that set forth in *Stone*.  Second, the ALJ failed to utilize the required technique set forth in the regulations for assessing the severity of mental impairments, 20 C.F.R. § 404.1520a(c)(d).  Those two errors at step two, in this case in which the ALJ did not progress beyond step two, cannot be considered harmless, and warrant remand to the Commissioner for further consideration.

9

With respect to the first error, the ALJ set forth the severity standard in her decision as follows:

> At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c)). An impairment or combination of impairments is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1522; Social Security Rulings (SSRs) 85-28 and 16-3p).
>
> * * *
>
> For the reasons discussed below, the claimant does not have an impairment or combination of impairments that significantly limits her ability to perform basic work activities. . . .
>
> * * *
>
> Here, the evidence of record fails to document any severe impairment that more than minimally affects the claimant's ability to perform work activities.

(Tr. 38-39; 41). The ALJ's severity standard does not comport with *Stone*. While the ALJ correctly identified and described when an impairment can be considered "not severe," the circumstances identified and described by the ALJ for when an impairment can be considered "severe" are incongruous and fail to acknowledge the gap between impairments that "minimally" affect a claimant's ability to perform basic work activities (which the ALJ would consider non-severe) and impairments that "significantly" affect a claimant's ability to perform basic work activities (which the ALJ would consider severe). Because there is such a gap, which the Fifth Circuit in *Stone* ostensibly sought to close by exclusively premising the severity determination on whether or not the impairment was a "slight abnormality having such minimal effect on the individual that it would not be expected to interference with the individual's ability to work, irrespective of age, education or

work experience," *Stone*, 752 F.2d at 1101,[2] and because the ALJ did not apply a consistent severity standard that comported with *Stone* to the mental impairments at issue, the ALJ erred in her step two assessment of Hillery's mental impairment(s).

Second, the regulations require an ALJ, when assessing the severity of a mental impairment, to consider and rate a claimant's ability to function in four broad areas: understand, remember or apply information; interact with others; concentrate, persist or maintain pace; and adapt and manage oneself. 20 C.F.R. § 404.1520a(c)(3). The claimant's ability in those four broad areas is rated on a five point scale: "None, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4). If the four areas are rated as none or mild, it is "generally concluded that [a claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1). The ALJ did not utilize this technique, at all. Instead, the ALJ focused on the fact that Hillery had made no complaints of depression, had not been treated for depression, and had been evaluated by Dr. Pollock only for purposes of establishing disability (as opposed to treatment). While that focus could have been used to assess Hillery's functioning in those four broad areas, it was not, and the Court cannot, in this administrative review context, conduct such an assessment. The ALJ's error(s) at step two in assessing Hillery's mental impairment(s) require remand for additional consideration.

---

[2] The severity standard in *Stone* is "[p]hrased in the negative," meaning that "an 'impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (quoting *Stone*, 752 F.2d at 1101)).

**VI.**      **Conclusion and Order**

Based on the foregoing and the conclusion that the ALJ erred at step two, and that the step two error(s) cannot be considered harmless, it is

ORDERED that Plaintiff's Cross Motion for Summary Judgment (Document No. 16) is GRANTED, Defendant's Motion for Summary Judgment (Document No. 14) is DENIED, and this matter is REMANDED to the Commissioner for further proceedings

Signed at Houston, Texas, this 16th day of March, 2021.

Frances H. Stacy
United States Magistrate Judge